NEWIRTH
LINEHAN

September 2, 2026

**VIA ECF**
The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Velazquez v. City of New York, et al.*, No. 25 Civ. 10699 (LJL)(KHP)
Plaintiff's Response to Defendants' Letter Motion (Dkt. 46)

Dear Judge Liman:

We write to oppose Defendants' August 31, 2026, request to hold the parties' deadlines to respond to discovery demands in abeyance until after a settlement conference that has yet to be scheduled and for an unspecified period.

**Productive Settlement Discussions Require More, Not Less, Information**

Defendants' settlement rationale defeats their own request. The letter motion tells the Court both that Defendants "are not yet in possession of all of the relevant documents and therefore would not be able to provide adequate responses" to Plaintiff's discovery demands, Dkt. 46 at 3, and that because "his conviction is a highly publicized case, and there is significant information in the media regarding the same," "this Office can readily assess this case for settlement." Dkt. 46 at 4. Both cannot be true. Press coverage is not a basis on which to value a wrongful conviction case. It does not disclose what the detectives did in 1998, what the post-conviction review file contains, what the City's training and disciplinary records show, or the full extent of what Mr. Velazquez has lost. One cannot assume that the full scope of the misconduct that caused Mr. Velazquez's wrongful conviction has been uncovered, making the public record of the case incomplete. Nor are settlements of other wrongful conviction claims a substitute for evaluating this case on its merits: comparable settlements may set a floor but, in extreme cases such as this one, do not dictate the proper result. Finally, the City ignores Plaintiff's own need for discovery to meaningfully engage in settlement discussions, by informing his valuation of the case, settlement strategy, and ultimate negotiation. Productive settlement discussions require discovery to continue.

Nor are the City's efficiency arguments persuasive. While both parties have expressed interest in an early resolution of this case, that resolution is far from guaranteed. Given the real possibility that the case will not settle, as well as the volume of material at issue, the efficient course is to continue responding to demands while the parties pursue settlement, so that this case can move forward whatever the outcome of the conference.

**The Court of Claims Subpoenas Do Not Relieve the City of Its Obligations in This Case**

Mr. Velazquez has brought two actions arising from his wrongful conviction: this one, and a claim against the State of New York under Court of Claims Act § 8-b. In the Court of Claims action, the parties jointly sought and obtained judicial subpoenas duces tecum to the New York County District Attorney's Office (DANY) and to the New York City Police Department (NYPD) for records of Mr. Velazquez's investigation, prosecution, and conviction, and of DANY's repeated post-conviction reviews. Both agencies are responding on a rolling basis, and DANY's response to that subpoena is the production Defendants describe in their letter motion.

Plaintiff's discovery demands in this case, served on the City and the Individual Defendants on July 15, 2026, seek information and documents not sought by the subpoenas issued in Mr. Velazquez's Court of Claims action, including: interrogatories (which the subpoenas cannot compel) seeking the identity of relevant parties and record keeping systems; *Monell*-related discovery, including DANY's training materials, policy manuals, and materials relating to the process for investigating and disciplining members; records of other cases in which similar misconduct was alleged or established; documents and information maintained by the Individual Defendants; and documents underlying the ten affirmative defenses in Defendants' Answer, filed nine months after the subpoenas issued.

The City's arguments for holding discovery in abeyance focus entirely on DANY, ignoring its obligations to produce records of NYPD and the Individual Defendants. There is no reason for the City not to respond to Mr. Velazquez's discovery demands for information and records held by either NYPD or the Individual Defendants, both targets of Mr. Velazquez's demands.

With respect to DANY, the City's claim that responding to Mr. Velazquez's discovery demands in this case depends on the same DANY staff responding to the Court of Claims subpoena, and would thus slow down that response, does not withstand scrutiny as to the interrogatories, *Monell*-related discovery, and affirmative defenses. As to the interrogatories and affirmative defenses, the staff responding to the subpoena presumably have no direct knowledge of Mr. Velazquez's prosecution and so would not be the same individuals responsible for responding to interrogatories. Likewise, counsel for the City interposed the affirmative defenses and must have done so based on records they reviewed. With respect to the *Monell* discovery, these documents are not part of Mr. Velazquez's case file, but rather the administrative records of DANY and thus would be produced to the City by different DANY employees. The City can—and should—demand the responsive records from its agency, review them, and produce them promptly. *See Bellamy v. City of N.Y.*, 914 F.3d 727, 758 (2d Cir. 2019) (where a *Monell* claim challenges the policies of the City's constituent counties, the City is the "proper defendant").

Finally, the Court of Claims subpoenas cannot substitute for the City's obligations in this federal action. Those subpoenas bind non-parties and are enforceable, if at all, by contempt before Judge Shillingford, who has no jurisdiction over the City or the Individual Defendants in this action. Holding discovery in abeyance and relying solely on DANY's subpoena response suspends the only mechanisms that reach the records unique to this action and limits this Court's control over the discovery process and the Defendants before it.

**DANY's One Year Production Schedule Is Indefensible**

DANY's one year estimate to complete production is not merely the result of the volume of material or the size of assigned staff, as the City suggests but is the result of DANY's and/or the City's refusal to allocate appropriate resources to the case. Dkt. 46 at 2 & n.2.

On August 10, counsel for Mr. Velazquez and the City spoke with ADA Sidney Balman, who is overseeing DANY's subpoena response. ADA Balman agreed that, given the repeated reviews of Mr. Velazquez's case by DANY's Post-Conviction Justice Unit (PCJU), most critical documents would likely be contained within the PCJU's file, which is in electronic form and is being reviewed (and produced) first. ADA Balman further agreed that the true number of unique records is likely much smaller than the total number of records, because many paper records are likely duplicated in the PCJU file and the paper records may include multiple copies of the same documents. Moreover, the total number of records in DANY's possession includes materials such as transcripts, appellate filings, decisions, and Mr. Velazquez's executive clemency package. These are documents the parties likely already possess, and/or are not outcome determinative. Critically, ADA Balman explained that his one-year production timeline was largely based on the time-consuming process of human review and comparison of documents between the PCJU electronic file and the paper documents, because ADA Balman had not been given access to document review tools, such as e-discovery platforms or deduplication software.

On August 12, ADA Balman confirmed that he will have access to Nuix and Concordance, programs that may be able to assist with deduplication or review but cautioned that the possibility of expediting review through these applications will depend on the quality of the scanned records. As of August 31, ADA Balman did not have an update about this. The City would not tell us whether it can or would be able to assist DANY by providing digital document review tools. The City shares none of this with the Court, instead reporting that DANY's one-year document review estimate is attributable to the limited staff handling the production and the volume of documents. Dkt. 46 at 2 & n.2. Discovery in this Section 1983 case cannot be delayed because the City of New York refuses to allocate sufficient resources to conduct document review and production in what the City acknowledges is a significant, high-profile, document intensive case. Mr. Velazquez spent more than two decades wrongly convicted of and incarcerated for a crime he did not commit; he should not have to wait any longer.

**The Asserted Relationship Between the City and DANY Is an Obstacle to Discovery**

During the August 10 telephone conference, ADA Balman asserted, and counsel for the City did not dispute, that the City does not represent DANY and cannot review DANY's documents or assert or assess any privilege or protection over them. This position leaves no one before this Court who can answer for the District Attorney's records, and it creates additional delay, as the City's attorneys will have to review the documents DANY produces after DANY completes its review. If it will take DANY a year to complete review, there can be no guarantee that it will take the City just as long to complete its own review.

The position also raises important discovery questions. How can Corporation Counsel certify under Rule 26(g)(1) that a response is complete and correct after a reasonable inquiry into records it has not been permitted to see? Can Corporation Counsel satisfy Rule 26(b)(5)(A),

requiring a party withholding material to describe the withheld documents well enough for Plaintiff and the Court to assess the claim without having seen the withheld documents? Can Corporation Counsel answer Plaintiff's interrogatories under oath on information reasonably available to the City, as Rule 33(b)(1)(B) and (b)(3) require? The District Attorney's Office is not a party here and owes Plaintiff nothing under Rule 34. If this is, in fact, the relationship between the City and DANY, Plaintiff will be required to subpoena DANY in order to bring DANY before this Court and ensure that all documents relevant to this action are produced.

***

Plaintiff respectfully requests that the Court deny the requested abeyance; direct Defendants to respond within thirty days to Plaintiff's July 15, 2026, demands as to documents within the City's own possession, custody, or control, including those described above; and set a conference to address the production schedule and the relationship status of the City and DANY described above. Plaintiff further requests that the Court direct the parties to file joint status reports on the progress of the production every forty-five days and that Defendants obtain from DANY and report to the Court the results of its deduplication effort and the extent of the overlap between the electronic and paper sets. Plaintiff does not oppose an extension of the fact discovery deadline set as part of that schedule, with interim milestones, rather than left to be renegotiated after an indefinite deferral.

We are available at the Court's convenience and will submit a joint proposal on the production schedule if Defendants are willing to join one.

Very truly yours,

Karen A. Newirth | Charles F. Linehan | /s/ Oscar Michelen Oscar Michelen